## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,

| | | |
|---|---|---|
| BOLLING PRESCRIPTION LAB, INC. d/b/a ROSELAND PHARMACY, an Illinois professional company, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 17-cv-1485 |
| v. | ) ) | |
| ADELPHIA SUPPLY USA, INC., YUDAH NEUMAN, REUVEN SOBEL, and JOHN DOES 1-10, | ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Bolling Prescription Lab, Inc., d/b/a Roseland Pharmacy ("Roseland" or "Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except for those allegations pertaining to Plaintiff or its attorneys, which are based upon personal knowledge, alleges the following upon information and belief against defendants Adelphia Supply USA Inc., Yudah Neuman, Reuven Sobel, and John Does 1-10 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.      Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R. § 64.1200 (collectively, the "TCPA").

2.      Defendants sent Plaintiff at least 20 advertisements by facsimile and

in violation of the TCPA. <u>Exhibits A-T</u>.

3.    Plaintiff brings this action on behalf of itself and a class of all similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages if the Court determines the violations were knowing or willful, injunctive relief, compensation and attorney fees (under the conversion counts), and all other relief the Court deems appropriate under the circumstances.

4.    Unsolicited advertising faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited advertising faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax also wastes the recipient's valuable time that would have been spent on something else.

5.    The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement…." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "**<u>any</u>** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission…." *Id.*, § 227 (a)(5) (emphasis added).

6.     Defendants' faxes advertise Defendants' wholesale pharmaceutical supply goods and services, including prescription pharmaceuticals, over-the-counter medications, and medical supplies. Exhibits A-T.

7.     Defendant Adelphia is a for-profit business.

## PARTIES, JURISDICTION, AND VENUE

8.     Plaintiff is an independent pharmacy located in Chicago, Cook County, Illinois.

9.     On information and belief, Adelphia is a New York corporation with its principal place of business in Brooklyn, Kings County, New York. According to the State of New York Division of Corporations, Adelphia was dissolved "by Proclamation / Annulment of Authority" on June 29, 2016.

10.     On information and belief, defendant Reuven Sobel is a resident of New York.

11.     On information and belief, defendant Yudah Neuman is a resident of New York.

12.     John Doe Defendants 1-10 are persons yet unknown to Plaintiff that actively participated in the transmission of fax advertisements to the class, benefitted from those transmissions, or are successors in interest to Defendants. When Plaintiff discovers their identities, it will seek leave to amend this complaint to add allegations regarding such person's activities and liabilities in this action.

13.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

14.     Personal jurisdiction exists over Defendants in Illinois because Defendants have transacted business and committed tortious acts within the State.

15.     Venue is proper in the Northern District of Illinois, because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

16.     Defendant Adelphia is a wholesale medical supply company that provides prescription medication, over the counter medications, and medical equipment, including but not limited to medications, diabetic testing supplies, thermometers, and blood pressure monitoring supplies, at discounted prices.

17.     On information and belief, Defendant Neuman is an owner and controlling officer of Adelphia with the authority to direct Adelphia's activities and marketing.

18.     On information and belief, Defendant Sobel is the chief executive officer with the authority to direct Adelphia's activities and marketing.

19.     Defendants sent numerous advertisements by facsimile to Plaintiff and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiff), Defendants are directly liable for violating the TCPA.

20.     Plaintiff has received at least twenty of Defendants' advertisements by facsimile. True and correct copies of the faxes received between September 1, 2016 and January 20, 2017 are attached as Exhibits A-T.

21.     In this action, Plaintiff intends to discover the total number of advertisements Defendants sent to Plaintiff and all others by fax. Exhibit U, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

22.     Each of Exhibits A-T is a one-page document Defendants sent by fax advertising pharmaceutical products and medical supplies at discount prices. The faxes advertise the commercial availability or quality of property, goods, or services. Exhibits A-T. Each fax promotes sales and pricing good only for a limited time. Exhibits A-T. Exhibit A advertises Defendants' "Hot Deals!!" in large font and states the "Sale Price Ends 9/2/2016." Exhibit A. Exhibit B advertises Defendants' "Memorial Day Leftover Deals!" in large font and states the "Sale Price Ends 9/6/2016." Exhibit B. Exhibit C and Exhibit E advertise Defendants' "Awesome Friday Deals!" in large font and list a date when the "Sale Price Ends." Exhibit C and Exhibit E. Exhibit D advertises Defendants' "Monday Funday!" in large font and states the "Sale Price Ends 9/12/2016." Exhibit D. Exhibit G promotes Defendants' "Hot Deal!!" on blood pressure monitors and states "Sale Price Ends 9/23/2016." Exhibit G. Exhibit H, Exhibit N, Exhibit P and Exhibit Q advertise Defendants' "Monday Deals!" in large font and list a date when the "Sale Price Ends." Exhibit H, Exhibit N, Exhibit P and Exhibit Q. Exhibit I instructs recipients to "Order Today!" in large font and states the "Sale Price Ends 9/30/2016." Exhibit I. Exhibit K instructs recipients to "Hurry Up" in large font and states the "Sale Price Ends 10/13/2016." Exhibit K. Exhibit L advertises Defendants' single day sale,

stating "Today Only – Last Chance!" Exhibit L. Exhibit R advertises Defendants' "Black Friday Steals!" in large font and states the "Sale Price Ends 11/25/2016." Exhibit R. Exhibit S advertises Defendants' "Rock Bottom Deals!" in large font and states the "Sale Price Ends 1/13/2017." Exhibit S. Exhibit T advertises Defendants' "Friday Steals!" in large font and states the "Sale Price Ends 1/20/2017." Exhibit T.

23.    Each of Defendants' fax documents provides Adelphia's toll-free telephone number, fax information, and website. Exhibits A-T. Fax recipients may make purchases using any of the three methods.

24.    Exhibits A-T do not include the mandatory opt-out notice required by 47 C.F.R. § 64.1200 (a) (4).

25.    On information and belief, Defendants sent similar advertisements by facsimile to Plaintiff and more than 39 other persons in violation of the TCPA.

26.    Plaintiff and the other class members owe no obligation to protect their fax machines from Defendants. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action as a class action on behalf of itself and all others similarly situated as members of a class, initially defined as follows:

> Each person that was sent one or more telephone facsimile messages from "Adelphia Supply" after February 27, 2013 promoting the commercial availability of pharmaceuticals or medical supplies but not stating on its first page that the recipient may make a request to the sender not to send any future ads and that failure to comply with such a request within 30 days is unlawful.

Plaintiff expressly reserves the right to modify the proposed class definition or propose subclasses after discovery about Defendants' fax advertising program.

28.　Excluded from the class are Defendants, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, any entity in which any Defendant has a controlling interest, any parent, subsidiary or affiliated company of Defendants', and any Judge assigned to this action, including his or her immediate family.

29.　On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery.

30.　This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiff's claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

31.　**Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and

their identities are unknown to Plaintiff, but will be obtained from Defendants' records or the records of third parties.

32. **Commonality and predominance.** There is a well-defined community of interest and there are common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a. Whether Defendants sent facsimiles promoting the commercial availability or quality of property, goods, or services;

b. Whether Exhibit A-T and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants are "advertisements" under the TCPA;

c. The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent the advertisements contained in Exhibits A-T and other similar fax advertisements;

d. Whether Defendants' fax advertisements contained opt-out notices compliant with the TCPA;

e. Whether the Court should award Plaintiff and the other class members statutory damages;

f. If it finds that Defendants willfully or knowingly violated the TCPA, whether the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than

3 times the amount;

      g.    Whether the Court should enjoin Defendants from faxing advertisements in the future; and

      h.    Whether Defendants' conduct as alleged herein constituted conversion.

33.    **Typicality of claims.** Plaintiff's claims are typical of the claims of the other class members, because Plaintiff and all class members were injured by the same wrongful practices. Plaintiff and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if Plaintiff prevails on its claims, then the other putative class members will prevail as well.

34.    **Adequacy of representation.** Plaintiff is an adequate representative of the class because its interests do not conflict with the interests of the class it seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiff intends to vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interest of members of the class.

35.    **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiff and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such

inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements or if Defendants choose to advertise by fax again in the future.

36. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the class would be proper. Plaintiff envisions no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

37. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

38. Plaintiff brings Count I on behalf of itself and a class of similarly situated persons against Defendants.

39. The TCPA prohibits the "use of any telephone facsimile machine,

computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

40. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

41. Exhibits A-T advertise Defendants' commercially available pharmaceutical, over counter, and medical products and supplies.

42. Defendants sent Exhibits A-T and other similar advertisements to Plaintiff and the fax machines of other independent pharmacies to promote sales of Defendants' pharmaceutical and medical goods and services.

43. The TCPA provides a private right of action as follows:

> 3. Private right of action. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
> (A) An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>
> (C) Both such actions.

47 U.S.C. § 227 (b) (3).

44. The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

45.     Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as Exhibit A) to Plaintiff and the other class members without their prior express invitation or permission.

46.     The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

47.     The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

In implementing the requirements of this subsection, the Commission ...

(D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...

(i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;

(ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;

(iii) the notice sets forth the requirements for a request under subparagraph (E);

(iv) the notice includes—

(I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to      the sender; and

(II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by      rule

require the sender to provide such a mechanism    and  may,  in  the discretion of the Commission and       subject to such conditions as the Commission may   prescribe, exempt certain classes of small business       senders, but only if the Commission determines that       the costs to such class are unduly burdensome given      the        revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

    (i) the request identifies the telephone number or    numbers  of the telephone facsimile machine or       machines  to  which  the  request relates;

    (ii)  the  request  is  made  to  the  telephone  or  facsimile number  of  the  sender  of  such  an  unsolicited  advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

    (iii) the person making the request has not, subsequent    to such request, provided express invitation or  permission to the sender, in writing or otherwise, to       send  such  advertisements  to  such person at such       telephone facsimile machine;

48.    The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) expressly

require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

    (A) The notice is clear and conspicuous and on the first page of the advertisement;

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

…

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at

such telephone facsimile machine.

49. Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as <u>Exhibits A-T</u>) to Plaintiff and the other class members without their prior express invitation or permission.

50. Furthermore, Defendants violated 47 U.S.C. § 227 (b) (2) (D) and (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) by failing to include a compliant opt-out notice. <u>Exhibits A-T</u>.

51. In violation of the TCPA, Defendants' faxes do not inform recipients that Defendants' failure to comply with an opt-out request within 30 days is unlawful.

52. Furthermore, Defendants' fax does not inform its recipients of the requirements to opt-out of future facsimiles, as explained by 47 C.F.R. § 64.1200 (a) (4) (v). Specifically, Defendants' faxes do not inform Plaintiff and other putative class members that they must identify the telephone number of the telephone facsimile machine to which their opt-out request relates. Additionally, Defendants' faxes fail to inform Plaintiff and the putative class that a request must be made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement. Finally, Defendants' faxes fail to inform recipients that an opt-out request will be valid until the recipient subsequently provides express invitation or permission to the sender, in writing or otherwise, authorizing advertisements by fax.

53. Contrary to the TCPA, the Defendants' faxes fail to provide recipients two methods for opting out, instead providing only a fax number. 47 U.S.C. § 227 (b)

(2) (D) (iv) (I).

54.     Moreover, Defendants' fax fails to provide a cost free mechanism for recipients to opt-out of receiving future faxes. 47 C.F.R. § 64.1200 (a) (4) (iii) (d) (2). Defendants' faxes instruct recipients to fax 775-908-1980 for removal from Defendants' list. Exhibits A-T. Area code 775 is a Nevada area code, not a toll-free number. Even Defendants' website listed on each of Defendants' faxes fails to provide a link to allow recipients to opt-out of future faxes.

55.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4) (iii).

56.     Defendants' failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising campaigns. 47 C.F.R. § 64.1200 (a) (4).

57.     The TCPA is a strict liability statute and Defendants are liable to Plaintiff and the other class members even if Defendants' actions were negligent. 47 U.S.C. § 227 (b) (3).

58.     If Defendants' actions were knowing or willful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

59.    Defendant Adelphia is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes advertise Defendant's good, products, or services, the faxes were sent on Defendant's behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

60.    Defendant Neuman is liable for the fax advertisements at issue because he sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, hired and paid a fax broadcaster to transmit the advertisements by facsimile, directed that the faxes be sent, approved the design and recipients of the faxes, is the alter ego of Adelphia, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

61.    Defendant Sobel is liable for the fax advertisements at issue because he sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, hired and paid a fax broadcaster to transmit the advertisements by facsimile, directed that the faxes be sent, approved the design and recipients of the faxes, is the alter ego of Adelphia, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

62.    Defendants knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services,

that Plaintiff and the other class members did not have an established business relationship with Defendants', that <u>Exhibits A-T</u> were advertisements, and that <u>Exhibits A-T</u> do not display a compliant opt-out notice as required by the TCPA.

63.    Defendants' actions damaged Plaintiff and the other class members. Receiving Defendants' junk faxes caused the recipients to lose paper and toner consumed in the printing of Defendants' faxes. The subject faxes used the fax machines of Plaintiff and the other class members. The subject faxes wasted Plaintiff's valuable time, requiring receipt and review of Defendants' unlawful fax. Defendants' faxes unlawfully interrupted Plaintiff and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in statutory damages for each of Defendants' violations of the TCPA;

C.    That, if it finds Defendants willfully or knowingly violated the TCPA, the Court exercise its discretion to increase the amount of the statutory damages

award to an amount equal to not more than three times the amount (Plaintiff requests trebling);

D.    That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.    That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

64.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

65.    Plaintiff brings Count II on behalf of himself and a class of similarly situated persons and against Defendants.

66.    By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' own use. Where printed (as in Plaintiff's case), Defendants also improperly and unlawfully converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiff's time to Defendants' own use, as they did with the valuable time of the other class members.

67.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

68.    By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time

to their own use. Such misappropriation was wrongful and without authorization.

69.     Defendants knew or should have known that their misappropriation of paper, toner, and employee time was wrongful and without authorization.

70.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

71.     Defendants' unsolicited faxes effectively stole Plaintiff's employees' time because persons employed by Plaintiff were involved in receiving, routing, and reviewing Defendants' illegal faxes. Defendants knew or should have known employees' time is valuable to Plaintiff.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just and

proper under the circumstances.

Respectfully submitted,

BOLLING PRESCRIPTION LAB, INC. d/b/a ROSELAND PHARMACY, an Illinois professional company, individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock
Robert M. Hatch
Tod A. Lewis
David M. Oppenheim
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555